Before we start the clock, I have a question. There's two of you seated at council table. Are you going to be making all the argument? Yes, Your Honor. Okay. All right. Then go ahead and proceed and state your name. All right. Good morning, Your Honors. Fernando I. N. Girocha of White and Case on behalf of the claimants, Angela Gomez Aguilar, Enrique Aguilar Gomez and Grupo Internacional de Asesores. We're here today to ask this court to find that the district court abused its discretion in failing to set aside entry of default and default judgment in connection with the claimants, in this case, our clients. Claimants Angela Aguilar and Grupo could not file a timely claim in this case because they were legally precluded from doing so. The legal impediment was Angela Aguilar's stipulated sentence in a related criminal case, which in hindsight was the product of repeated acts of prosecutorial misconduct. By the time that impediment had been set aside and the convictions of Angela Aguilar and others vacated, the time had elapsed, expired, and it was an untimely period in which to file claims. Although the standard of review in this case is deferential to the district court, abuse of discretion, this court has, on numerous occasions and in numerous cases, found just that, an abuse of discretion in refusing to set aside default. In determining whether the district court abused its discretion, this court is required to determine de novo whether the lower court applied the correct legal standard, and we submit to this court that that was not the case, that it did not happen. The correct legal standard has been in place for approximately 30 years. It was first articulated by this court in 1984 in Falk versus Allen, in which the court stated, quote, the judgment by default is a drastic step, appropriate only in extreme circumstances. The case should, whenever possible, be decided on the merits. Now, Falk is in the, the factors that you look at in Falk are in the disjunctive, correct? Yes, sir. And I think the district judge here found at least in part two of the disjunctives, I think, on the culpability and the meritorious, whether there was a meritorious defense. You used the words extreme circumstances. Is there any, is that a freestanding requirement, or is that just something you still look at the Falk factors and? We submit to the court that the, the notion of a finding of extreme circumstances is applicable in all rules 60 and 55 cases. Has any published opinion ever said that? Well, it's our, it's our position that that is the case. That's an easy enough to answer. Has any published opinion ever said that extreme circumstances is separate from the Falk factors? Messley, obviously, is a published opinion, and it provides an extreme, it sets forth this test, this standard of review, if you will, and provides that extreme circumstances have to justify, there has to be a finding which justifies it. In, in, if I could, this court repeated the requirement in 2001, after Falk, in TCI Life, Insurance versus Knobber, in which it said that the longstanding principle that default judgments are disfavored applies, and that judgment by default is a drastic step appropriate only in extreme circumstances. This was followed in 2010 by Messley, which set forth the same standard. In the four and a half years since Messley, there have been two cases granted, not published, but nonetheless, two cases issued by this court in which district court decisions were reversed, in which there were no findings whatsoever of extreme circumstances. First, in Diversified Products in 2011, and second, in Donnell v. Tynert in 2013. In each of these cases, the court held that the lower court's failure to find extreme circumstances constituted an automatic abuse of discretion. There was no analysis in either of those cases of the Falk factors, because extreme circumstances, in and of itself, had not been considered by the district court and required reversal. So, let me ask you, let me ask you this. I think we're, all of us are familiar with the cases you just mentioned, but what seems a little bit odd is that none of the cases you've just talked about give any substantive content to this so-called extreme circumstances prong or finding, or whatever you want to call it. I guess I had assumed that you, the district court, was supposed to go through the three Falk factors, and once you did that, depending on your analysis of that, that would tell you whether extreme circumstances existed or not. You obviously are asking us to say that, no, extreme circumstances has some independent content to it. But I guess my question to you is, well, what is it? What is it that we're supposed to say the district court should have done, other than go through the three Falk factors? I think the district court was required to find exactly that, that there were extreme circumstances in this case under these circumstances, and the facts that were unique, really a unique set of facts when you look at every other published case in this area, and make a specific finding that extreme circumstances existed in this case that justified the entry of default. In answering this question, I think what the court is getting at is essentially, what does extreme circumstances mean? None of these decisions essentially discuss or elaborate on precisely what it means. But I think a careful review of each of these cases shows the following. It's important to keep in mind that in reaching this conclusion as to whether to set aside entry default and default judgment, at the end of the day, it's an equitable process, it's an equitable analysis, and there's a very strong policy preference for adjudication on the merits, and I think at the end of the day, that's what the district court didn't do, and we believe it should have done. Okay, but let me just give you a hypothetical. It's not our case exactly, but let's say that I'm the district court, and I determine, I'm going through the Falk factors, and I determine that the second one, the absence of a meritorious defense, that that's the one I'm going to rely on. The other two, I grant, are either neutral or they favor the person who wants the default set aside. So what are the extreme circumstances I'm supposed to find in connection with that problem, the Falk factors? I don't even know what that would look like. In terms of meritorious defense? You either have a meritorious defense or you don't, but telling me that I have to find extreme circumstances, I don't know what, what would I do with that as a district court with respect to the second part, if that's the one I'm going to rely on? Well, all we can really do is draw from examples that are set out in cases. Take franchise holding, for example. The court does not address extreme circumstances. It merely says that in the case of culpability, that mere notice and failure to respond demonstrates culpability and addresses the other prongs in Falk. Our view is that the facts in that case were what we would consider to be extreme, that they were egregious. You had a company that had in-house counsel that had a general counsel. General counsel was served with the summons and the complaint. There was no reason why the company could not have responded to the summons and complaint. Instead, it waited for 11 months and didn't take action until not just default had been entered, but default judgment had been entered under Rule 60B. And only after the plaintiff began collection efforts and began to enforce its judgment, its hands weren't tied in any way. And we believe that those facts are different from our facts. Okay, but you're talking about the first prong, and I get how extreme circumstances could play into that, but the district court need only rely on one prong, as I understand it, right, to deny relief. Well, under the Falk factors, and that's where we disagree with the district court, is that we believe that as Donnell and, excuse me, and Diversified tell us or show us the analysis is flipped around. What the court wants to see is a finding of these extreme circumstances. Otherwise, if there weren't any, the analysis can't end there. If this court were to apply the Falk factors, as the district court did, then again, we view those as part of, sort of a holistic analysis of all of the circumstances in the case, so that all of the equities are being considered in the case, which include whether, in fact, there are equitable circumstances or extreme circumstances that justify entry of default along with culpable conduct and whether there's a meritorious defense. We have positions as to whether or not we have a meritorious defense. We believe that the standard is fairly low. We know from TCI and Brandt that the standard is minimal, that all the party has to show is a minimal showing. This is not the time to evaluate the veracity of facts that are alleged for purposes of establishing a meritorious defense. Okay. But let's say I'm the district court, and I've gone through the Falk factors, and I think, boy, there's certainly a lack of culpability or whatever. But, and there might be extreme circumstances in every other respect, but when I look to see, is it worth us wasting our time reopening this to actually litigate it, it's crystal clear to me that this claimant or this plaintiff, whatever, has no, this defendant, I guess, has no meritorious defense whatsoever. So, I mean, I think our cases say that in that circumstance, you're not supposed to grant relief from default because it would be a complete waste of time if it's that clear. So I guess I'm, you're disputing in, you know, in your case that it's that clear, but what if we disagreed with you and we said, you know what, she wasn't the owner, first of all, she was a shareholder, so, you know, there's, she has no individual claim to these funds. You know, the company, there were other people who could have, you know, litigated the matter. It wasn't just her, and so we agree with the district court that this is, this would be a waste of time, even though there might be extreme circumstances that explain why your client couldn't have come forward earlier, but we're not going to waste our time reopening this because the outcome of this is crystal clear. If that's the kind of case we have, I don't, to me extreme circumstances just don't have any, don't have anything to say about whether the district court abuses discretion or not. Okay. A couple of points, if I could. The, Brant has, this court has told us in Brant that the FOC factors are not to be applied mechanically. Again, that all circumstances should be taken into consideration and there should be an equitable analysis. And in fact, that the FOC factors can be disregarded if the equitable circumstance is justified, all right? So, so it doesn't require sort of a mechanical application of each of these factors, which is what the court did. With respect to meritorious defense, I hear what the court is saying, but we have a different view of the facts. We believe that if allowed to litigate the case, conduct discovery, and potentially try it, that the case isn't as strong as the government would like it to be. So for example, the key piece of evidence that's alleged in the government's forfeiture complaint that allegedly establishes that the funds that Grupo transferred, excuse me, that Lindsay transferred into Grupo funds were tainted from the beginning because allegedly, the Lindsay defendants knew that they would be used in this manner to pay bribes. But my understanding is Angela says she, her claim is meritorious because she's an innocent owner and Grupo says that the government's complaint is not legally sufficient and that's how, that's what the court looked at. Well, the court looked at, the court also weighed evidence in the criminal case that it had heard and came to that conclusion. Well, but is Grupo, Grupo's, they're saying that the state, that they, that the government lacks a lack of temporal causation or something and so they're saying that it's insufficient, right? That's what, that's what we are saying, yes. There are a couple of reasons. There is a temporal dissonance between 2002 and 2006, not a single bribe payment is made, yet, you know, eight contracts are, are, are. You know, you only have like less than two minutes. Yes. So do you want to save that for rebuttal? I will, thank you. Okay, thanks. And counsel in rebuttal, I'll ask you about the Brandt case. Good morning, Your Honor. Good morning. Jennifer Resnick on behalf of the United States. The district court's decision to deny the potential claimant's motion to set aside entry of default and default judgment was squarely within its discretion. It considered the disparate standards between Mesley and franchise holdings and properly found that this case was easily distinguishable from Mesley. Mesley, which involved somewhat lamentable circumstances with a legally ignorant pro se, was highly distinguishable. And this case was much more similar to franchise holdings because this was a corporate, these, these were funds seized from a corporate brokerage account. The corporation, Grupo, was sophisticated. It had actual notice of the complaint. Grupo was competently and actively represented by seasoned big firm counsel. And Grupo strategically chose not to answer in order to gain an advantage in the litigation. And even though I am still in the position that. Can I ask you, that statement doesn't quite ring true to me. Maybe I just don't know the facts as well as you do. I guess I thought the reason Grupo didn't respond was because Angela Aguilar couldn't, right, by virtue of the, that, that agreement? Well, that's what the defense has alleged in their briefs. But there is absolutely no evidence that Grupo was precluded from filing a claim. But Grupo was not. Who would have done it on, I mean, who would have acted on the company's behalf other than Angela and I guess her husband who really couldn't because he was a fugitive, right? Correct. Well, the government set forth some evidence in its answering brief that there were at least three other people who appeared based on documentary evidence that was submitted in the criminal trial to have authority to act on behalf of Grupo. There was a president, there was a secretary, and there was Angela's daughter who appeared to be some sort of officer or have some sort of authority. She was signing documents on behalf of Grupo. And the defense has actually just said, well, the government hasn't shown that these people actually had that authority in 2011, that that authority was based on documents from 2002 and 2006, I believe, but there's no evidence that they did not. There's, they've put forth no evidence. They've just made this assumption and made us guess about who actually has authority to act on behalf of Grupo. Okay, but so you start out by saying, I think, I don't know, that Grupo made either a deliberate or a strategic decision not to respond. And what was the, I don't understand, what would have motivated Grupo if it could, if there were some person who could have responded on its behalf, why would it not have done so? Well, again, this is a theory, but the procedural history shows that as soon as the December 1st order came out dismissing the criminal indictment against the Lindsay defendants, the Aguilar's seized upon that opportunity to try and broker a settlement with the government. So it seems clear that they were waiting for a more favorable tide, hoping that the government would either dismiss its civil case or that they would be able to settle the case without having to have Enrique Aguilar, who's the fugitive, come forward and knowing that Angela was precluded under this post-trial agreement. But whether or not these other people came forward, I don't really think, you know, we can say why they didn't come forward. It seems pretty clear that either they were, that their authority was maybe just a straw authority or that they didn't want to get involved because the government is investigating criminal activity here and why would they want to put themselves forward if they didn't have an actual stake in Grupo. Maybe you can just address your opponent's argument about the effect of Mesley, because I can't make heads or tails of the case. It does seem to discuss an extreme circumstances aspect of the analysis that's totally independent of the fault factors. And in fact, in the Mesley case, the district court did go through the fault factors and nonetheless, our court faulted the district court's analysis and said, no, you apparently don't get it. There's this other thing, extreme circumstances, that you must find in order to deny relief and it reversed on that basis. So I guess I'm left thinking that probably your opponent has the better of the argument on this point, but maybe you can talk me out of that. Well, I think these, A, what is clear is that these extreme circumstances are not magic words, that the district court wasn't required to actually verbalize that it was finding extreme circumstances regardless of whether or not it was actually required and the government has argued that these extreme circumstances were not required under franchise holdings. But even if the court finds that the district court had to make findings that comported with this extreme circumstances notion, that it simply wasn't the case that the court had to utter the magic words in order to bless this default. Well, but we know from Mesley that it's not enough for the court, the district court, just to go through the fault factors, right? So. Correct. And so it seems like the court does need to tell us as the reviewing court what the extreme circumstances are, even if it doesn't have to use those magic words. So what in the district court's order here tells us, you know, something beyond the fault factors were found? Well, I think what the Mesley court was getting at and actually mentioned at the very end of its opinion was that it wanted the district court to have a, quote, proper awareness of this standard. And it was clear in Mesley that the district court there did not have a proper awareness of this standard because of the circumstances. And I won't go through the history of Mesley, but the district court there did not bear in mind what was actually required by Falk and did not weigh those circumstances in light of Mesley's ignorance of the law, the fact that it was per se unsophisticated. I think really what the court was getting at is that the court has to look at the totality of the circumstances. Unfortunately, there's not a lot of case law telling us what exactly is extreme, but here the court found that the potential claimants were playing games, that we have a fugitive who really is probably an alter ego for this corporation, and the court found that they were doing this legal gamesmanship and even said something to the fact that he wasn't even going to comment on what the lawyers were doing in this case. But it was clear that the court was not pleased at the fact that the claimants were trying to make this end run around this agreement that he said he had blessed and that instead of just coming forward when they clearly had notice of the complaint, they played this wait and see game. Now, that on top of the fact that the court had the benefit of five weeks of testimony in the criminal case and found that there was no way that the potential claimants would be able to establish a meritorious defense and that the funds at hand were actually belonging to this corporation that was legally sophisticated, that was clearly represented by counsel throughout the course of both the criminal and civil proceedings. These are extreme circumstances and the defense has conceded that the circumstances in franchise holdings were extreme and if those were extreme, then here the circumstances must be extreme because the corporation here, the group did not have its hands tied just like the defendant in franchise holdings. And we also have a long procedural history where the claimants had notice as far back as 2008, signed an agreement tolling the forfeiture deadline, got notice again after Angela was sentenced at the sentencing hearing in her post-trial agreement. We have this long communication, trail of communications between government counsel and claimant's counsel. This is clearly a case where they had substantial notice and chose not to do anything. I think that makes it extreme. Your opposing counsel relies on Dinell versus Tynert and I could see why they would rely on them because it does seem to in that case, they kind of just sent it back. I don't think you dealt with that case in your brief so I wanted to give you an opportunity now. How would you respond to their reliance on that case? Well again, that is an unpublished opinion and it appears although there are not a whole lot of substantive facts in the opinion to go on, that this was a case that was much more similar to Mesley. The appellant had no legal representation and there is no indication that they were sophisticated in any way. So the fact that the court there grabbed on to these extreme circumstances words can't be explained because the court didn't give an explanation. It just latched on to what the Mesley court had described as so imperative but I think that Mesley is so distinguishable and they were such unique circumstances that it caused those extreme circumstances terms which the court had borrowed obviously from other courts, TCI and Falk, to really stress that the district courts need to consider this as a totality and that of course this is abuse of discretion standard so if these extreme circumstances were, if mentioning these extreme circumstances were required or if the extreme circumstances was something else that needed to be considered outside of the Falk factors, then I think we'd be probably in more of a core error standard than an abuse of discretion standard. Are you aware of any courts that have applied the Aguilar's version of Mesley? And I don't mean Ninth Circuit, other circuits that have had some, created some sort of extreme circumstances, you actually have to say that in the district court order. I'm not aware of any opinions that deal with the extreme circumstances terms or factor. What I mean is that the Aguilar's are reading Mesley to say, you know, the district court didn't say these were extreme circumstances, therefore it's got to go back. Are you aware of any circuits that follow that line of thought? No, I'm not. All I know is that Mesley borrowed its language from TCI and TCI in turn borrowed that language from the Second Circuit and there's an opinion in the Second Circuit, American Alliance Insurance Company, which doesn't necessarily talk about the extreme circumstances but it goes more into depth about what is willful, what is bad faith, what is deliberate and there is actually a case mentioned in that opinion where they are dealing with a fugitive who was trying to make a claim in a civil case and the court found that that was egregious and that upheld the default judgment in that case. We have no further questions unless you have something you want to say to wrap up. Your Honor, I would just end with emphasizing that this is Grupo's money, this is not Angela's money, it wasn't Enrique Jr.'s money and if this case was remanded, we'd end up right back in the same circumstances here because Grupo is the only potential claimant that had standing. Angela's claim would be dismissed for lack of standing, Enrique's would be dismissed for lack of standing and Grupo simply had no meritorious defense to this case. Thank you. Thank you counsel. Your Honor, I'm not exactly sure where the best place is to start in terms of the court sphere. I think you answered Judge Owen's question, it's the best place to start. Brandt. So Brandt does not cite an extreme circumstances requirement and that's a published decision versus the now which is unpublished. So I just wanted to get your take on the significance of the Brandt case. Well, it's significant in terms of the other standards that are set forth in our brief. But there are, our view is that this isn't just about Mesley, right, as counsel just said, Mesley looks to TCI, TCI draws from Falk. There is, all three of those cases address the concept of extreme circumstances. I recognize that again there aren't detailed analysis of that particular prong, but it's in our view that given the court refused to make any such findings and instead relied entirely on the other factors. And again, to just briefly address the point of meritorious defense, it's our view that if allowed to defend the case and take testimony, that there is evidence that contradicts many of the government's allegations. The trial court itself in its December 1 order vacating the convictions and dismissing the indictment made findings, it made statements regarding the state of the government's evidence against the Lindsay's. It said that the evidence was not very strong, that there was no direct evidence of their knowledge that the funds would be used in this way. We believe that those are indicative of weaknesses in the government's case, that at the end of the day, the government has to prove, to forfeit this money, the government must prove that those, that there was an agreement in advance of the transfer of the funds between the Lindsay's and the Aguilar's that the monies would be used to pay bribes. And we submit to the court that that is not the case and that can be contradicted. And we've laid out facts in our brief that support that. The 30% commission, for example, there's evidence that it was reasonable. The temporal gap for four years, not a single bribe payment was made, yet contracts were awarded by the electric utility to Lindsay Manufacturing. The amount of... Unless there are additional questions, you've gone into overtime, so wrap up. Yes, I apologize. I apologize. What I submit to the court is that this court, I mean, the MESLI is not really all that uncommon. It's not all that uncommon for an individual who has no legal training or sophistication to receive something and not know perfectly well how to respond. What is uncommon is for an individual to be prosecuted along with others and for circumstances to be so severe, for there to be violations of discovery that are so rampant in a case where there are false statements made to a grand jury that lead to convictions being set aside. And it was only because of that conviction that our client entered into this agreement and her hands were tied as a result of it and could not file claims. The critical time period is June to September of 2011. All right, thank you for your argument. This matter will stand submitted.
judges: Callahan, Watford, Owens